# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT NAMER**                                                    **CIVIL ACTION**

**VERSUS**                                                                **No. 15-3317**

**AMERICAN INTERNET SERVICES,**                              **SECTION I**
**LLC**

## ORDER AND REASONS

Defendant, American Internet Services, LLC ("AIS"), has filed a motion[1] for summary judgment and for sanctions.  Plaintiff, Robert Namer ("Namer"), has filed an opposition.[2]  At issue in the motion for summary judgment is whether a contract ever existed between AIS and Namer.  AIS contends that none did, as its "Internet Colocation" agreement was with a company called Blue Haven National Management, Inc.—not with Namer himself.  Accordingly, AIS argues that Namer has no right to sue under the contract.

Namer argues in opposition that because the contract refers only to "Blue Haven" and not "Blue Haven National Management, Inc.," it is ambiguous with respect to the identity of the parties.  He directs the Court to extrinsic evidence which he claims supports his argument that "Blue Haven" really means "Robert Namer."  He argues that because the contract is ambiguous and because a reasonable jury could accept his interpretation of the contract as correct, genuine issues of material fact preclude summary judgment.

---

[1] R. Doc. No. 24.
[2] R. Doc. No. 32.

For the following reasons, the Court agrees with AIS that the contract is not ambiguous and that AIS and Namer never had a contract.  The Court therefore grants the motion for summary judgment, but the motion for sanctions is denied.

## BACKGROUND

Namer brought this lawsuit for damages due to an alleged breach of contract by AIS.[3]  The contract at issue is an "Internet Colocation" agreement ("Colocation Agreement") that was signed in August 2009.[4]  The Colocation Agreement in essence provided that AIS would provide physical space within premises operated by AIS, known as internet colocation space, where "Blue Haven" could physically place servers owned by "Blue Haven."  Pursuant to the contract, AIS would provide electrical power, internet connectivity, and IP addresses for the servers.[5]  The parties do not dispute that at the time of contract formation, no entity named "Blue Haven" existed.[6]

The opening paragraph of the seventeen-page contract states that the agreement is "by and between" AIS and "Blue Haven," but it does not provide more detailed information such as Blue Haven's state of incorporation or business address.[7]  Pages eight and nine of the contract specify that there is "no third-party beneficiary" to the contract and that "no person or entity other than the parties and their respective successors and assigns . . . shall be entitled to bring any action to enforce . . . this Agreement."[8]  Page ten provides that the written agreement "constitutes the entire

---

[3] R. Doc. No. 1, at 8.  Namer's complaint is titled "Complaint for Breach of Contract," and contains only a breach of contract claim.  R. Doc. No. 1.  Furthermore, Namer does not dispute AIS's assertion that "[t]here is no doubt that the Complaint asserts only a claim for breach of contract." R. Doc. No. 24-2, at 4.
[4] R. Doc. No. 24-3, at 6.
[5] R. Doc. No. 24-3.
[6] R. Doc. No. 32-2, at 3.
[7] R. Doc. No. 24-3, at 6.  The cover sheet of the agreement similarly says that the "Agreement for Internet Colocation" is "Presented to Blue Haven."  R. Doc. No. 24-3, at 5.
[8] R. Doc. No. 24-3, at 12-13.

agreement between the Parties . . . and supersedes all prior or contemporaneous, written or oral negotiations, agreements, correspondence, and/or understandings between the parties. . . ."[9]

The contract was signed by Ted Helton ("Helton"), who indicated that he was signing in his capacity as "Director MIS" of "BHNMI," and "by direction."[10]  On the following page, under the "Customer Contact Information" heading, there are entries for a "Billing Contact" and a "Technical Contact."  The Billing Contact listed is Serena Schirmer ("Schirmer"), with an address located at "Blue Haven National Management, 636 Broadway – third floor, San Diego 92101."[11]  The Technical Contact listed is Helton, with an address located at "Blue Haven National Management, 636 Broadway – third floor, San Diego 92101."[12]  Schirmer and Helton also provided their email addresses, which were, respectively, "sschirmer@bluehaven.com" and "thelton@bluehaven.com."[13]  The affidavits of plaintiff and Helton that are attached to plaintiff's opposition both indicate that Helton was employed by Blue Haven National Management, Inc. until 2011.[14]

The contract nowhere mentions the name "Robert Namer."  In spite of that fact, Namer argues that the parties "had a mutual understanding that the term 'Blue Haven' referred to Namer and his assorted operations, not to a given legal entity."[15]  Indeed, Namer alleges that "AIS asked Namer if there was one name under which his various business activities could be identified for

---

[9] R. Doc. No. 24-3, at 14.
[10] R. Doc. No. 24-3, at 15.  In an affidavit attached to Namer's opposition, Helton indicates that he signed the contract "on [Mr. Namer's] behalf."  R. Doc. No. 32-12, at 2.
[11] R. Doc. No. 24-3, at 16.
[12] R. Doc. No. 24-3, at 16.
[13] R. Doc. No. 24-3, at 16.
[14] R. Doc. Nos. 32-2, 32-12.
[15] R. Doc. No. 32-1, at 2.

billing purposes and for simplicity, and they suggested the generic term 'Blue Haven'. . . ."[16] According to Namer, AIS was informed prior to the contract formation that "while Namer owned and controlled the servers, the colocation fees would be paid by Blue Haven National Management, Inc. . . . at Namer's direction and on his behalf."[17]

To bolster his argument, Namer points out that the servers stored by AIS also hosted his personally-owned websites such as WebNetInfo.com and HotTalkRadio.com.[18] He further directs the Court's attention to the fact that Blue Haven National Management, Inc., a California Corporation, ceased to exist as a legal entity in April 2011.[19] After that date, a company called Blue Haven Pools and Spas, Inc., a Nevada corporation allegedly controlled by Namer, began paying AIS's fees.[20] Namer emphasizes that there was no new written agreement between AIS and the Nevada corporation because the term "Blue Haven" as used in the agreement "did not have an altered meaning; it still referred to Namer and his assorted operations as a group, not to a given legal entity."[21]

## LAW AND ANALYSIS

### I.   Summary Judgment Standard of Law

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of

---

[16] R. Doc. No. 32-1, at 2.

[17] R. Doc. No. 32-1, at 2.

[18] R. Doc. No. 32-1, at 1.  Namer does not contest AIS's assertion that "AIS had and has no access, virtual or otherwise, to the software or data on Blue Haven's servers at the AIS Colocation Facility, even though they are located at the AIS Colocation Facility."  R. Doc. No. 24-1, at 2.

[19] R. Doc. No. 32-1, at 3.

[20] R. Doc. No. 32-1, at 3.

[21] R. Doc. No. 32-1, at 4.  AIS responds that it had no knowledge that an entity other than Blue Haven National Management, Inc. assumed the contract in 2011.  R. Doc. No. 38, at 2.  Regardless, "[s]uch assumption of the contract would still not transform Plaintiff into a contracting party."  *Id.*

material fact and that the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."  *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

II.   **Contract Interpretation under California Law**

The parties do not dispute that the Colocation Agreement chooses California law to govern its terms.[22]  Under California law, a claim for breach of contract consists of the following elements: (1) the existence of a contract; (2) plaintiff's performance (or excuse for nonperformance); (3) defendant's breach; and (4) damages.  *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745 (Cal. Ct. App. 2001).  If no contract existed between Namer and AIS, he cannot recover on a breach of contract claim.

Contract interpretation is a question of law for the court to decide unless the interpretation depends on the credibility of extrinsic evidence—in which case, the issue must be left to the trier of fact.  *See City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 395 (Cal. 2008) ("Interpretation of a written instrument becomes solely a judicial function only when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence.").  The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract.  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (Cal. 1992); *see also* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.").  That intent is interpreted according to objective rather than subjective criteria.  *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1126 (Cal. Ct. App. 2008).

Where, as here, "a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."  Cal. Civ. Code § 1639.  The words are to be

_____

[22] R. Doc. No. 24-3, at 13.

understood "in their ordinary and popular sense," unless the terms are "used by the parties in a technical sense or a special meaning is given to them by usage." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (Cal. 1993); Cal. Civ. Code § 1644. *See also* 1 Witkin, Summary of California Law, Contracts § 745 (10th ed. 2005). When "the language [of a contract] is clear and explicit, and does not involve an absurdity," then such language "is to govern [the contract's] interpretation." Cal. Civ. Code § 1638. Within these limits, however, a contract's language must be construed "in the context of that instrument as a whole, and in the circumstances of that case. . . ." *Bay Cities*, 5 Cal. 4th at 867.

Whether a contract is ambiguous is a question of law. *Hillman v. Leland E. Burns, Inc.*, 209 Cal.App.3d 860, 866 (Cal. Ct. App. 1989). "A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations." *United Teachers of Oakland v. Oakland Unified Sch. Dist.*, 75 Cal.App.3d 322, 330 (Cal. Ct. App. 1977). California law holds that "even if the trial court personally finds the document not to be ambiguous, it should preliminarily consider all credible evidence to ascertain the intent of the parties." *Appleton v. Waessil*, 27 Cal.App.4th 551 (Cal. Ct. App. 1994). In such cases, the district court engages in a two-step process: "First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step-interpreting the contract." *Winet v. Price*, 4 Cal.App.4th 1159, 1165 (Cal. Ct. App. 1992).[23]

---

[23] California law in fact calls for fairly liberal use of extrinsic evidence to determine the meaning of a contract: "Even if a contract appears unambiguous on its face, a

"Even if the written agreement is clear and unambiguous on its face, the trial judge must receive relevant extrinsic evidence that can prove a meaning to which the language of the contract is 'reasonably susceptible.'" *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979).  But if, after considering this evidence, the court finds that the contract language is not reasonably susceptible to the interpretation urged and is unambiguous, extrinsic evidence cannot be received for the purpose of varying the terms of the contract.  *Id*.  In such circumstances, the case may be disposed of by summary judgment.  *Id*.

## III.   Analysis

After examining the language of the Colocation Agreement, the Court concludes that it is unambiguously a contract between AIS and Blue Haven National Management, Inc., not a contract between AIS and Namer.  The term "Blue Haven," when viewed in the context of the contract as a whole, clearly refers to Blue Haven National Management, Inc.  Indeed, that is the entity listed beneath Helton's signature on the contract and the entity whose address is provided as contact

---

latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible."  *Morey v. Vannucci*, 64 Cal.App.4th 904, 912 (Cal. Ct. App. 1998) (citing *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 40 & n. 8 (Cal. 1968); *Pac. Gas & Elec. Co. v. Zuckerman*, 189 Cal.App. 3d 1113, 1140–41 (Cal. Ct. App. 1987)).  "If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, is 'fairly susceptible of either one of the two interpretations contended for . . .,' extrinsic evidence relevant to prove either of such meanings is admissible."  *G.W. Thomas Drayage*, 69 Cal.2d at 40 (quoting *Balfour v. Fresno Canal & Irrigation Co.*, 109 Cal. 221, 225 (Cal. 1895)) (citations omitted).  "Indeed, it is reversible error for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous on its face."  *Morey*, 64 Cal.App.4th at 912.

*Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, No. 14-CV-00930-JCS, 2015 WL 7350446, at *9 (N.D. Cal. Nov. 20, 2015).

information.  No side disputes that Helton was employed by Blue Haven National Management, Inc. at the time the contract was entered into (as was Namer himself), and indeed when Helton executed the contract he wrote specifically that he was signing "by direction," and in his capacity as "Director MIS" of "BHNMI," which can only refer to Blue Haven National Management, Inc.

The language of the contract, read as a whole, unequivocally indicates that "Blue Haven" was simply shorthand for Blue Haven National Management, Inc.—not a generic term meant to encompass all of Namer's business operations.  Indeed, Namer's name is listed nowhere in the contract, and he was not even a signatory to the agreement.

Furthermore, portions of the extrinsic evidence Namer cites in support of his interpretation are inadmissible.  Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that affidavits submitted with regard to a motion for summary judgment be made on the basis of personal knowledge and set out facts that would be admissible.  In his affidavit, Namer refers to statements he claims that AIS made during contract negotiations that supposedly evidence AIS's awareness of the fact that Namer was contracting on behalf of himself, not simply on behalf of Blue Haven National Management, Inc.  He relates discussions between himself and unidentified AIS representatives but fails to identify by name, title, department and/or division, the individuals who allegedly made any statements to him.  Namer's affidavit is instead characterized by phrases such as "AIS inquired" and "AIS asked."[24]

As AIS argues, this evidence is inadmissible hearsay.[25]  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  "In the absence of a procedural rule or statute,

---

[24] R. Doc. No. 32-2, at 3.
[25] *See* R. Doc. No. 38, at 3.

hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804, or 807." *Orr v. Bank of America*, 285 F.3d 764, 778 (9th Cir. 2002). For the purposes of summary judgment, "the focus is not on the form of the evidence as it is presented in an affidavit, but rather, whether at trial the matter stated in the affidavit would constitute admissible evidence." 11 James Wm. Moore et al., Moore's Federal Practice ¶ 56.14(1)(d) (3rd ed. 2007) (citing *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992)).

It is true that pursuant to Rule 801(d)(2)(D) an out-of-court statement of a declarant is not hearsay if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). As the proponent of such evidence, however, Namer has the burden of establishing the preliminary facts that bring the statement within Rule 801(d)(2)(D). *United States v. Richards*, 204 F.3d 177, 202 (5th Cir. 2000), overruled on other grounds, *United States v. Cotton*, 535 U.S. 625, 629 (2002). "The statement itself may be considered in making this determination. However, '[t]he contents of the statement . . . are not alone sufficient to establish . . . the agency or employment relationship and scope thereof under subdivision (D).'" *Richards*, 204 F.3d at 202 (quoting Fed. R. Evid. 801(d)(2)) (internal citations omitted). "Rule 801(d)(2) has since been amended but the amended version still makes clear that any such statement 'does not by itself establish . . . the existence or scope of the relationship under (D).'" *Rhodes v. Wells Fargo Bank, N.A.*, No. 3:10-CV-02347-L, 2013 WL 2090307, at *6 (N.D. Tex. May 14, 2013) (quoting Fed. R. Evid. 801(d)(2)).

As the Fifth Circuit held in *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.*:

It should not be understated, however, that while a name is not in all cases required, a district court should be presented with sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D).

864 F.2d 1171, 1174 (5th Cir. 1989); *see also Harrison v. Formosa Plastics Corp. Tex.*, 776 F.Supp.2d 433, 440 (S.D. Tex. 2011) (court held that the plaintiff failed to establish that the statements of the defendant's purported employees fell within the Fed. R. Evid. § 801(d)(2)(D) exception to the hearsay rule, because the plaintiff failed to identify the names or job titles of the defendant's purported employees).

Namer has not presented evidence to show that the unidentified AIS representatives referred to in his affidavit were agents or employees of AIS or that the statements were made by agents or employees of AIS in the scope of their employment or agency. In addition to his failure to provide names of any AIS representatives with whom he spoke, Namer has not described the representatives themselves nor the place or time of the negotiations. He has not filed supplemental briefing supporting the admissibility of such information or requested a continuance in order to supply the requisite information.

The alleged statements alone are insufficient to satisfy *Davis*'s requirement that the proponent of the evidence present to the district court "sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D)." *Davis*, 864 F.2d at 1174. "[Namer's] unsubstantiated contention that the statements at issue were made by [AIS's] agents and employees is not evidence and does not satisfy [Namer's] burden with regard to Rule 801(d)(2)(D)." *Rhodes*, 2013 WL 2090307, at *6. The alleged statements by AIS therefore should not be considered.

Even if the Court were to consider this extrinsic evidence, however, Namer's interpretation of the contract remains implausible.  Under California law, the Court is to determine whether the extrinsic evidence offered by Namer exposes a latent ambiguity in the contract that renders it reasonably susceptible to the meaning he urges.  *Morey*, 64 Cal.App.4th at 912.  The extrinsic evidence cannot be used to contradict the language of the contract; it can only be used to reveal a meaning that the language of the contract could reasonably support.  *Brobeck*, 602 F.2d at 871.  Simply put, the language of the contract, viewed as a whole, does not reasonably support the view that "Blue Haven" means "Robert Namer."  As explained above, the contract refers to "Blue Haven National Management" repeatedly and Helton, an employee of Blue Haven National Management, Inc., signed the contract "by direction" in his capacity as "Director MIS" of "BHNMI," an obvious acronym for Blue Haven National Management, Inc.  Namer's extrinsic evidence does not render the contract ambiguous.

The fact that AIS's colocation services continued to be used after Blue Haven National Management, Inc. ceased paying the bills in 2011 does not change this result, given that "[a] contract must be so interpreted as to give effect to the mutual intention of the parties *as it existed at the time of contracting*."  Cal. Civ. Code § 1636 (emphasis added).  Whether a breach or assumption of the contract by another company occurred in 2011 does not demonstrate that Namer was a party to the contract in 2009.  *See Brobeck*, 602 F.2d at 871 (this Court need only receive "*relevant* extrinsic evidence" when interpreting a contract).

Ultimately, the extrinsic evidence cited by Namer cannot undo the plain meaning of the Colocation Agreement itself.  In light of all the extrinsic evidence, the Court concludes that the contract language is not "reasonably susceptible" to the interpretation urged by Namer.  *Winet*, 4 Cal.App.4th at 1165.  "Blue Haven" does not mean "Robert Namer."

12

## IV.    Motion for Sanctions

AIS has also moved for sanctions against Namer and Namer's counsel.[26]  AIS argues that Namer should be personally sanctioned because this litigation is frivolous and was filed for the improper purpose of harassment.[27]  Defendant argues that Namer's counsel should be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure for failing to properly investigate this claim before filing suit.[28]  In response, Namer argues that sanctions are inappropriate because "[t]he factual contentions in Namer's Complaint for Breach of Contract were (and are) supported by admissible evidence, and the legal claims set forth therein arise out of currently existing substantive law."[29]

AIS is correct that plaintiff, Namer, "has shown a willingness to manipulate and abuse the judicial system in pursuit of vexatious litigation and tactics."[30]  *See, e.g., FTC v. Namer*, No. 06-30528, 2007 WL 2974059 (5th Cir. Oct. 12, 2007) (discussing Namer's attempts to recuse district judges, improperly attack final judgments, and use a radio talk show to attack a presiding judge, as well as warning against future frivolous appeals); *Nat'l Business Consultants, Inc. v. Lightfoot*, 292 Fed. Appx. 298 (5th Cir. 2008) (affirming sanctions against Namer et al. in various related cases which evidenced a "continuous pattern of evasion and abuse of administration of justice that must cease"); *see also Armond v. Fowler*, 694 So. 2d 358 (La. App. 5 Cir. 1996) (affirming sanctions against plaintiffs, including Namer, under Article 863 of Louisiana Code of Civil Procedure, the state court counterpart to Rule 11); *F.T.C. v. Nat'l Bus. Consultants*, 16 F.3d 1215,

---

[26] R. Doc. No. 24-2, at 5-9.
[27] R. Doc. No. 24-2, a7.
[28] R. Doc. No. 24-2, at 5.
[29] R. Doc. No. 32, at 6.
[30] R. Doc. No. 24-2, at 7.

1994 WL 57364 (5th Cir. 1994) (imposing sanctions against Namer et al. in the form of double

costs and attorney's fees and threatening to impose further sanctions in the future); *In re Nat'l Bus.*

*Consultants, Inc.*, No. 92-1522, 1992 WL 164528, at *1 (E.D. La. June 17, 1992) (dismissing

appeal of the bankruptcy court's dismissal of a bankruptcy petition filed by Namer et al. in bad

faith).  Nevertheless, even though the Court grants AIS's motion for summary judgment, the Court

declines to find at this time that plaintiff's counsel breached his Rule 11 obligations, even if

defendant complied with Rule 11's procedural requirements.[31]

    As for Namer himself,[32] the Court also declines to impose sanctions.  However, the Court

observes that its refusal to award sanctions at this time in no way limits or forecasts the Court's

---

[31] Rule 11(c) provides, in pertinent part:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. . . .

[32] In addition to its power to sanction Namer's counsel pursuant to Rule 11, this Court has the power to sanction Namer himself.  As the Fifth Circuit explained in *Wilson v. Novartis Pharm. Corp.*, 575 F. App'x 296, 298 (5th Cir. 2014) (affirming the district court's sanctioning of the parties):

> "A district court has the inherent authority to impose sanctions 'in order to control the litigation before it.'"  *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (citation omitted); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995).  This inherent authority includes the power to sanction "abusive litigation practices."  *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993).  "Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  Accordingly, "[t]his court has held that such sanctions should be confined to instances of 'bad faith or willful abuse of the judicial process.'"  *Woodson*, 57 F.3d at 1417.

ability to grant subsequent motions in this or other related matters upon a showing that Namer has engaged in a "willful abuse of the judicial process."  *Woodson*, 57 F.3d at 1417.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED** and all claims against AIS in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion for sanctions is **DENIED**.

New Orleans, Louisiana, March 3, 2016.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**